

**Signed and Filed: September 02, 2009**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 02-30419DM |
| CENTRAL EUROPEAN INDUSTRIAL | ) Chapter 11 |
| DEVELOPMENT COMPANY, LLC d/b/a | ) |
| CEIDCO, | ) |
| Debtor. | ) |
| In re | ) Bankruptcy Case |
| THE KONTRABECKI GROUP LP, | ) No. 02-30421DM |
| Debtor. | ) [Administratively |
| | ) Consolidated] |
| ARON M. OLINER, et. al., | ) |
| | ) Adversary Proceeding |
| Plaintiffs, | ) No. 03-3264DM |
| vs. | ) |
| JOHN KONTRABECKI, et. al., | ) |
| Defendants. | ) |

**MEMORANDUM DECISION ON MOTIONS TO STRIKE AND
FOR PRECLUSION ORDER[1]**

The following are the court's rulings on plaintiff Lehman Brothers Holdings, Inc.'s ("Lehman") Motion to Strike the

---

[1] This Memorandum Decision constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

-1-

Declaration of John Kontrabecki Dated January 31 [sic],[2] 2009, and for Entry of Preclusion Order.  Lehman's motion ("Motion to Strike") seeks to strike John Kontrabecki's ("Kontrabecki") declaration signed and filed on January 29, 2009 (the "January Declaration") in opposition to Lehman's Motion for Partial Summary Judgment as well as in support of his own Motion for Partial Summary Judgment, and requests that the court preclude ("Motion to Preclude") any consideration of that declaration or subsequent revisiting of the question of Kontrabecki's intent in connection with the share dilution transaction ("SDT").  The court will deny Lehman's Motion to Strike, in part, grant it, in part,[3] and will grant Lehman's Motion to Preclude.[4]

**I.  Motion to Strike - Fifth Amendment Issues.**

Kontrabecki had every reason to claim the Fifth Amendment privilege in 2003.  There is no need to speculate as to the tactical advantage of doing so; there were clear threats that he was or would become the subject of a criminal investigation.  Lehman argues that had Kontrabecki not done so, the unwind of the

---

[2] Although Lehman refers to John Kontrabecki's declaration as dated January 31, 2009, it was actually signed and filed on January 29, 2009.

[3] As discussed later, the court is not at this time addressing the paragraph-by-paragraph evidentiary objections to the January Declaration.

[4] In its Order on Lehman's Motion for Protective Orders Re Subpoenas and Kontrabecki's Motion to Compel Trustee to Supplement Response, filed August 23, 2009, the court deferred ruling on Lehman's motion insofar as it relates to U.S. Government Communications Documents.  See Order on Motions for Protective Orders Re Subpoenas and to Compel Trustee to Supplement Response, 2:7-10, dkt. no. 1854.  Given the present ruling on the Motion to Strike, that portion of Lehman's motion is DENIED.

SDT might have been accomplished much earlier.  That is pure speculation at this point, and more importantly, if it is so, then a delayed unwind is merely the consequence of a properly invoked privilege.

Now Kontrabecki wishes to waive his Fifth Amendment privilege and testify at trial and in opposition to Lehman's Motion for Partial Summary Judgment.  More specifically and principally, he wants the court to consider the January Declaration to demonstrate his subjective intent at the time of the SDT.  He contends that Lehman cannot demonstrate legal prejudice if his testimony is considered.

While the court is not unsympathetic about the many years that have gone by since the events of January and February, 2003, and memories of witnesses fade, it is not persuaded and wholly unconcerned that Kontrabecki will be able to "fashion custom-crafted testimony" (as Lehman cautions) that defeats the liabilities he faces.  And as will be explained below, Lehman will not be put to the risk of litigating the intent issues again.

Of greater significance than all of the other factors, however, is the fact that Lehman knew, by early August, 2003, that the chances of prosecution of Kontrabecki had substantially diminished because an Assistant U.S. Attorney ("AUSA") reported to Lehman's counsel by letter that ". . . we have not solved the problem of the dedication of investigative resources to this case."[5]  Then, just days later, Lehman's counsel had a telephone conversation with a Special Assistant United States Trustee

---

[5] The court agrees with Kontrabecki that the AUSA's letter should have been produced in response to his discovery request.

("UST"), who reported that ". . . although she and her office remained interested in pursuing a prosecution of Mr. Kontrabecki, the position of the U.S. Attorney's office foreclosed any realistic prospect of doing so."

Certainly those two communications did not mean that the "file was closed" and Kontrabecki was home free, but they certainly were relevant facts which Kontrabecki should have known. And even if Lehman's counsel adhere to their belief that they had an ethical obligation to their client not to inform Kontrabecki of the AUSA's letter, by July, 2004, when Kontrabecki wanted to waive his Fifth Amendment privilege in part, Lehman did not advise the court (even in camera) that the situation had changed. Thus, the court's decision at a hearing on July 23, 2004, to strike Kontrabecki's July 19, 2004 Declaration was based on less than complete information.

When these matters first came to light during oral argument on March 31, 2009, the court was left with a very unpleasant and frankly disconcerting feeling about the fundamental lack of fairness to Kontrabecki to know now that the risk of prosecution six years ago was demonstrably less than he or his counsel or the court could possibly have imagined at the time. Preliminarily the court felt that a certain odor of impropriety had contaminated the entire case, looking all the way back to the coercive monetary sanctions, and then to the more serious incarceration. The only way to clear the air at that time seemed to be to permit Kontrabecki to testify fully and completely about every aspect of his defenses at trial, if not in connection with any other relief he may have chosen to seek.

Now that the facts have been fully explained, however, the court has an entirely different view of the matter. More particularly, now the court knows that it lacked another piece of critical information on July 23, 2004, viz., that Kontrabecki was prepared to waive his Fifth Amendment privilege and testify about all matters relevant to his defense. Nevertheless, he remained silent despite the court's encouragement to his counsel:

> "If you wish to renew this motion or in any way have Mr. Kontrabecki testify in order to get off the coercive sanctions, you're free to do it . . ." Transcript, July 23, 2004, 201:22-24.

Then a little later:

> "Let's say tomorrow you come up with some new information that Mr. Kontrabecki's prepared to testify to or a new - a broader scope of timeframe or subject matter. And you say let's try again, I'll hear you. Its my obligation to hear you." Id. at 202:24 - 203:3

Instead of hearing from Kontrabecki before incarceration then, the court now has learned from Kontrabecki's April 21, 2009, declaration that:

> ". . . my willingness to completely waive the privilege was not brought to the court's attention and I was not able to testify."

From the foregoing the court believes that any residual effect of the non-disclosure of the AUSA's August 4, 2003, letter and the UST's followup report was fully dissipated - the odor was gone!

The remaining question, then, is what to do about the present state of affairs and the forthcoming trial.[6]

---

[6] The questions before the court are not about unfiled sanctions motions, on which no opinion is being expressed. Nor does the court see a need to resolve the competing experts' opinions about what should or should not have been disclosed, nor

-5-

After balancing the competing equities, and notwithstanding the fact that Kontrabecki appears to have been solely responsible for much of what happened after he "was not able to testify", keeping him completely silenced is fair, necessary or appropriate. The court agrees with the authorities cited by Kontrabecki confirming a strong presumption in favor of permitting testimony at trial notwithstanding a prior claim of Fifth Amendment immunity. It will exercise its discretion to permit such testimony.

Lehman has had ample opportunity to take discovery from Kontrabecki without concern over his invoking the Fifth Amendment. Kontrabecki's counsel communicated his willingness to waive his Fifth Amendment privilege in April, 2007. Then in April, 2008, Kontrabecki responded to written discovery regarding intent issues. Since then, he has been deposed and can be again if necessary.

In summary, Kontrabecki will be allowed to testify on a limited basis at trial, and his January Declaration will not be stricken in its entirety. But because the court accepts Lehman's position on the intent issue, as discussed below, Kontrabecki will not be allowed to testify on that issue, nor on others (such as "control") that have been foreclosed for other reasons not addressed in the pending motions. The Motion to Strike will be GRANTED, in part, and DENIED, in part.

---

whether any ethical duties were breached, nor whether Kontrabecki could have learned about the AUSA's and UST's position themselves. The court has also been presented with the question of whether Kontrabecki waived his attorney client or work product privileges by submitting his April 21, 2009, declaration. The court agrees with Kontrabecki that there was no such waiver.

Since the court has disposed of the parties' motions for partial summary judgment by two memorandum decisions issued recently, it is not sure whether it is necessary to deal with the outstanding objections to specific paragraphs of the January Declaration. Certainly the declaration will not be admissible at trial without Lehman's consent, so the parties should be prepared to advise the court whether or not it needs to deal with those pending objections.

**II.  Motion to Preclude - Intent Issues.**

Kontrabecki complains about how the issue of his intent has been foreclosed. First, as early as September, 2003, the court found that Kontrabecki knowingly and intentionally caused the SDT and that his actions were adverse to the interests of TKG. See Findings of Fact #11, #14, and Conclusion of Law #19, Sept. 17, 2003, dkt. no. 276. Then, it found that Kontrabecki's acts were willful. See Conclusions of Law #3 and #4, March 30, 2004, dkt. no. 537.

Kontrabecki argues that those findings and conclusions were regarding Lehman's and TKG's First Cause of Action, Violation of Bankruptcy Code § 362. But willful is willful, and intentional is not accidental, regardless of the legal theory that applies to the irrefutable facts. Thus, early on in this case a critical fact was found without serious refutation, if any. See Lehman's Memorandum in Support of the Motion to Strike, n. 16.

While it is true that the court made those determinations during the time Kontrabecki knew of the threat of criminal prosecution but had not learned of the AUSA's position communicated to Lehman's counsel in August, 2003, he later did ask

the court to reconsider those early rulings years after he had made a conscious decision to waive the Fifth Amendment. <u>See</u> Kontrabecki's Motion for (1) Reconsideration of Prior Orders Granting Motion for Partial Summary Judgment on First Claim for Relief for Violation of the Automatic Stay, and (2) Order Dismissing First Claim for Relief, filed December 24, 2008, dkt. no. 1705.  In that motion, Kontrabecki did not offer any testimony to rebut the 2003 findings about the wilfulness of his conduct.

Later, Lehman's Countermotion for Partial Adjudication and Protective Order Re Proof of Intent Issues was filed on August 2, 2007, and sought as a matter of law a ruling on intent.  It was not argued until October 4, 2007. Kontrabecki had the facts to offer in opposition, but did not do so despite ample time.  His counsel's subsequent plea that he did not think it necessary falls on deaf ears.  Neither side in this case has been shy about filing briefs and declarations on any conceivable subject.  The fact is Kontrabecki had nothing to rebut as Lehman made its argument about intent as a matter of law.  The court previously determined that the procedure was not improper - Kontrabecki had sufficiently raised the intent issue in his attempt to take discovery of Piotr Kukulka so Lehman was justified in raising the issue.  In the October 10, 2007 Memorandum Decision regarding the aforementioned discovery motion, the court addressed the substance of the intent issue and dealt with it.  Kontrabecki has not convinced the court to go there

again.[7]  The Motion to Preclude will be GRANTED.

**END OF MEMORANDUM DECISION**

---

[7] That said, the court ignores both parties' arguments about applicable standards for reconsideration.  There are no final orders in this adversary proceeding.