ROBERT R. MOORE (BAR NO. 113818)
MICHAEL J. BETZ (BAR NO. 196228)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4074
Phone:  (415) 837-1515
Fax:  (415) 837-1516
E-Mail:  rmoore@allenmatkins.com
        mbetz@allenmatkins.com

Attorneys for Defendant
JOHN KONTRABECKI

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CENTRAL EUROPEAN INDUSTRIAL DEVELOPMENT COMPANY, LLC dba CEIDCO,<br><br>        Debtor,<br><br>THE KONTRABECKI GROUP LP,<br><br>        Debtor.<br> | Bk No.  02-30419-11-DM<br><br>Chapter 11<br><br>Adv. No. 03-3264 DM<br><br>Bk. No. 02-30421-11-DM<br>Chapter Number:  11<br><br>[Administratively Consolidated]<br><br>**DEFENDANT JOHN KONTRABECKI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR SANCTIONS AGAINST PLAINTIFFS TERMINATING THE ADVERSARY PROCEEDINGS** |
| ARON M. OLINER, et al.,<br><br>        Plaintiffs,<br><br>    vs.<br><br>JOHN KONTRABECKI, et al.,<br><br>        Defendants. | Date:     December 18, 2009<br>Time:    2:30 p.m.<br>Dept:    Courtroom 22<br>Judge:  Hon. Dennis J. Montali |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES
773141.05/SF

Case: 03-03264    Doc# 1947    Filed: 12/15/09    Entered: 12/15/09 22:59:16    Page 1 of
27

# TABLE OF CONTENTS

                                                                                **Page**

I. Introduction ............................................................................................... 1

II. Argument .................................................................................................. 6

    A.    The Actions of Lehman—Not Kontrabecki—Caused the Harm ........................... 7

        1.    Lehman's Counsel Knowingly Concealed the "No-Prosecution Letter" and Other Critical Information Concerning the Government's Intention to Prosecute Mr. Kontrabecki ........................................................................... 7

        2.    The Argument that the Protocol Is Inadmissible Misses the Point That Lehman's Counsel Could Not Misrepresent Its Existence Regardless of Admissibility ........................................ 8

        3.    Lehman's Argument That Kontrabecki and His Counsel Knew of the Kukulka Protocol Is Without Merit and Must Be Rejected .................................................................... 9

        4.    Neither Federal Law or Procedure Recognize the Privilege Lehman and Its Counsel Seek to Invoke—That of Winning at Any Cost .................................................................... 9

        5.    Lehman's Efforts to Demonize Mr. Kontrabecki Are Chock-Full of Misrepresentations ....................................................... 11

    B.    The Actions of Lehman's Counsel Caused Significant Prejudice—Including to Mr. Kontrabecki Personally and to his Ability to Litigate this Action ................................................................ 12

        1.    In Determining Whether to Issue Terminating Sanctions—No Finding of Prejudice Is Required ............................................ 12

        2.    Lehman's Counsel's Conduct Has Caused Mr. Kontrabecki to Personally Suffer Substantial Prejudice ...................................... 12

        3.    Lehman's Counsel's Conduct Has Caused Mr. Kontrabecki to Suffer Substantial Prejudice in This Adversarial Proceeding ................. 14

        4.    Lehman's Claim That Kontrabecki Suffered No Harm or Prejudice Has Also Been Rejected In Prior Rulings ............................... 15

    C.    The Evidence Is Clear—Lehman's Counsel's Actions Were Intentional ................................................................................ 15

    D.    Mr. Kontrabecki's Request for Terminating Sanctions Based on Lehman's Counsels' Egregious Conduct Is Proper .............................. 17

        1.    Lehman Chose Its Counsel and, Consequently, Is Bound By Its Counsel's Actions ................................................................ 17

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES
(i)

|  | | **Page** |
|---|---|---|
| 2. | Contrary to Lehman's Argument, the *Anheuser-Busch* Case Supports a Dismissal of This Adversary Proceeding | 18 |
| 3. | The Court's prior Rulings Do Not Bar The Relief Sought In This Motion | 20 |
| 4. | Mr. Kontrabecki Is Not Relying Solely on Rule 41(b) | 21 |

III. Conclusion ............................................................................................... 22

Case: DAUTHORITIES    Doc# 1947    Filed: 12/15/09    Entered: 12/15/09 22:59:16    Page 3 of 27

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Anheuser-Busch, Inc. v. Natural Beverage Distributors,*
    69 F.3d 337 (9th Cir. 1995) ................................................................. 21

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ................................................................................ 21

*Combs v. Rockwell Intern Corp.,*
    927 F.2d 486 (9th Cir. 1991) ............................................................... 12

*Fischer v. United States,*
    425 U.S. 391 (1976) .............................................................................. 11

*Halaco Engineering Co. v. Costle,*
    843 F.2d 376 (9th Cir. 1986) ............................................................... 12

*In re Dyer,*
    322 F.3d 1178 (9th Cir. 2003) ............................................................. 21

*In re Lehtinen,*
    564 F.3d 1052 (9th Cir. 2009) ............................................................. 21

*Link v. Wabash R. Co.*
    (1962) 370 U.S. 626 .............................................................................. 18

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,*
    507 U.S. 380 (1993) .............................................................................. 18

*Sternberg v. Johnston,*
    582 F.3d 1114 (9th Cir. 2009) ............................................................... 6

*United States v. National Med. Enters., Inc.,*
    792 F.2d 906 (9th Cir.1986) ................................................................ 12

*World Thrust Films, Inc. v. International Family Entm't, Inc.,*
    41 F.3d 1454 (11th Cir. 1995) ........................................................ 21, 22

*Yourish v. California Amplifier,*
    191 F.3d 983 (9th Cir. 1999) .......................................................... 21, 22

## **Rules**

ABA Model Rules of Professional Conduct Rule 3.3(a)(1) ...................... 22

ABA Model Rules of Professional Conduct Rule 3.3(a)(4) ...................... 22

ABA Model Rules of Professional Conduct Rule 3.3(b) .......................... 22

ABA Model Rules of Professional Conduct Rule 3.4(a) .......................... 22

Bankr. R. Civ. Proc. 7041 ........................................................................ 21

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES

(iii)

| | Page(s) |
|---|---|
| California Rule of Professional Conduct Rule 5-200(B) | 22 |
| California Rule of Professional Conduct Rule 5-220 | 22 |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The thrust of Lehman Brothers Holdings Inc.'s ("Lehman") and Aron Oliner's opposition ("Opposition") to Defendant John Kontrabecki's Motion to terminate this adversary proceeding ("Motion"), is alternatively that: (1) Mr. Kontrabecki caused his own harm; or, (2) Lehman's misconduct did not cause any prejudice to Mr. Kontrabecki; or (3) Lehman's attorneys did not act intentionally; or (4) there are no legal grounds to dismiss this action; or (5) the Court should ignore Lehman's ethical violations because the American Judicial System favors a trial on the merits of Lehman's "eight-figure damage claim," all of which collectively argue "no harm, no foul." As a starting point, Lehman has no "eight-figure damage claim." That claim was dismissed on summary judgment. *See* Docket # 1903, Accompanying Request for Judicial Notice ("RJN"), at Ex. 1.

Despite 30 pages of briefing, the Opposition virtually ignores Mr. Kontrabecki's argument, which focuses on two basic questions. First, was it proper and ethical for Lehman to withhold the contents of the Kukulka Protocol knowing Kukulka's answers support Mr. Kontrabecki's position; then for Lehman to make misrepresentations to the Court inconsistent with the protocol; then, when asked, state the protocol was irrelevant knowing it was not; and then finally representing there was no evidence available one way or another to either contradict Lehman's argument or support Mr. Kontrabecki's argument – all the while knowing these representations were not true? The second question is whether it was proper and ethical for Lehman to conceal the no-prosecution letter and subsequent conversation, both of which made clear there was no realistic threat of prosecution against Mr. Kontrabecki and then argue to put Mr. Kontrabecki in jail (in large part because of his failure to respond to Lehman's allegations) and then repeatedly argue to the Court that Mr. Kontrabecki was "nefariously" hiding behind the Fifth Amendment to conceal evidence from the Court? The answers to both questions are unquestionably, self-evidently – no. The only real question is whether Lehman's conduct mandates a dismissal of this case. The response is unquestionably yes.

### 1. Mr. Kontrabecki Is Supposedly At Fault

Lehman argues Mr. Kontrabecki caused his own harm by not admitting to his intentional torts and violation of this Court's orders in 2003, as if to say that the standard for attorney ethical

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Case: 0A013HORITES  Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 6 of
27

1 conduct is dictated by the allegations against the defendant, whether true or untrue. Without the
2 benefit of any authority for this remarkable position, Lehman is obviously asking the Court to adopt
3 a standard never acknowledged in any American Court. What makes Lehman's argument so
4 incredibly disingenuous is that Lehman threatened prosecution against Mr. Kontrabecki and then
5 made the criminal reference with the sole intent to keep pressure on Mr. Kontrabecki, which by
6 itself is another ethical violation. *See* California Rule of Professional Conduct Rule 5-100(A) (a
7 member shall not threaten to present criminal charges to obtain an advantage in a civil suit).

8    In making its argument, Lehman suggests Mr. Kontrabecki has admitted to the wrongdoing
9 alleged by Lehman, and it cites the testimony from Paul Riehle, Esq., and Mr. Kontrabecki. Neither
10 reference supports such a conclusion. Mr. Riehle testified only that he thought the recapitalization
11 was an unwise litigation strategy but had no opinion whether the recapitalization violated the stay
12 and deferred to bankruptcy counsel on that issue. The argument that Mr. Kontrabecki testified
13 during his deposition that he knew the recapitalization violated the automatic stay is equally false.
14 Mr. Kontrabecki testified that based on the advice from three separate bankruptcy attorneys, he
15 understood the recapitalization was not a violation of the stay, which was why he proceeded with
16 the recapitalization to keep the Polish companies alive. The advice appeared especially proper
17 given Lehman's repeated arguments that the Polish companies were not subject to this Court's
18 jurisdiction.

19    Lehman's argument that Mr. Kontrabecki caused his own harm by failing to request the
20 withheld information was discredited even before Plaintiff made it, as this Court has already ruled.
21 Lehman was obligated to produce the Kukulka Protocol and no-prosecution letter. In addition,
22 under the Federal Rules made applicable to this bankruptcy proceeding, a party need not ask for
23 prior responsive information; instead, it is the producing party's ongoing obligation to produce the
24 documents. Third, Lehman's claim that it was not required to produce the Kukulka Protocol under
25 Polish law misses the point. Even if Lehman was prohibited from turning over the actual Kulkula
26 Protocol, that did not relieve Lehman from its duty to be forthright with the Court and
27 Mr. Kontrabecki about the nature and circumstances surrounding the preparation of the Kukulka
28 Protocol. It was unquestionably unethical to conceal the contents and circumstances of the Kukulka

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES                -2-

Case: Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 7 of
27

Protocol from the Court and Mr. Kontrabecki and then to argue, without any reference to the Kukulka Protocol, that no evidence "out there" supports Mr. Kontrabecki's arguments—when they knew this was not true. The Opposition completely ignores and sidesteps this critical issue.

### 2. Lehman's Misconduct Did Not Cause Any Prejudice

As for the prejudice to Mr. Kontrabecki, this Court asked the right question when it asked Mr. Kauffman: "Well, would I have — would I have found on clear and convincing evidence in Lehman's favor if I had had a declaration in the spring of '04, like I now have, that you moved to strike? Do you think I would have made it on a clear and convincing standard?" Docket # 1735 at p. 158:13-17, RJN Ex. 2. Mr. Kauffman did not answer the question because the obvious answer is the Court could not have held Mr. Kontrabecki in contempt if Mr. Kontrabecki had testified—but that opportunity was foreclosed by Lehman's withholding of critical information it received from the Government which led Mr. Kontrabecki to continually assert his 5th Amendment privilege. The argument that there was no damage because Mr. Kontrabecki subsequently declared that he was willing to waive his 5th Amendment rights ignores entirely the fact that he did not testify and should have never been presented with the decision of whether to testify and face prosecution or remain silent and face incarceration. The evidence is that his attorneys continually advised him against testifying. That advice did not change, but obviously would have, if Lehman had been forthcoming. Indeed, Mr. Kontrabecki could have been ordered to testify. If the Court heard Mr. Kontrabecki's testimony, and learned of the existence of corroborating evidence such as the Kukulka protocol, Mr. Kontrabecki would not have been subjected to 14 months of incarceration and millions in fines.

Lehman's argument that neither the protocol nor the no-prosecution letter has any bearing on Mr. Kontrabecki's defense ignores entirely the impact of Lehman's failure to disclose Kukulka's statements and failure to disclose the fact there was no realistic threat of prosecution. It may be true that the Kukulka Protocol and no-prosecution letter do not help Mr. Kontrabecki today, but they certainly would have in 2003. First, even Lehman acknowledges that, if Mr. Kontrabecki testified in 2003, it would have eliminated Lehman's lost opportunity damage claim. See Docket # 1940 at pp. 4:23-26, RJN Ex. 3 ("[I]n reality, if Kontrabecki had answered questions under oath in 2003 admitting his intentional torts and violation of this Court's orders, it could have shortened these

Case: 09-... Doc# 1947 Filed: 12/15/09 Entered: 12/15/09 22:59:16 Page 8 of 27

1 proceedings by six years); *see also* Docket #1940 at 5:16-19, RJN Ex. 3. Lehman's counsels'

2 misconduct, however, and specifically their failure to produce the no-prosecution letter, resulted in

3 Mr. Kontrabecki's decision to remain quiet. How Lehman can argue there is no connection between

4 its withholding the no-prosecution letter and the damages it claims is astounding and inconsistent

5 with its own brief. Second, as it stands, if the Court were to reverse itself and allow a trial on

6 Lehman's lost opportunity damage claim, this Court held Mr. Kontrabecki cannot testify at trial on

7 the issue of his "intent" because Mr. Kontrabecki's intent has been determined as a matter of law in

8 large part because he refused to testify during the 2003-2004 contempt proceedings. *See* Docket #

9 1525 at 3:5-11 RJN Ex. 5 ("Kontrabecki has offered no evidence to overcome the inevitable

10 conclusion that his intent has been established as a matter of law. He could have offered something

11 to establish a material factual dispute as to his intent, or lack thereof; *that he has remained silent is*

12 *not insignificant*.") (emphasis added). Mr. Kontrabecki's silence, however, was a direct result of

13 Lehman's failure to reveal the no-prosecution letter and subsequent phone call, which made clear

14 there was no realistic threat of prosecution and, therefore, the need to assert the 5th Amendment

15 privilege. Finally, since 2003 Lehman has argued at virtually every stage of these proceedings that

16 key issues have been resolved through this Court's findings during the contempt proceedings.

17 Indeed, Lehman has been very successful in trying this entire adversary proceeding based on

18 findings from the 2003 contempt proceedings, in which Lehman managed to silence

19 Mr. Kontrabecki and conceal the Kukulka Protocol.

20 ### 3. Lehman's Attorneys Did Not Act Willfully

21 To determine whether Lehman's attorneys acted willfully, the Court need not look any

22 further than Mr. Kauffman's response to the Court when attempting to defend Lehman's refusal to

23 turn over the no-prosecution letter and information related to the subsequent phone call. During the

24 hearing, Mr. Kaufmann boldly stated that Lehman had absolutely no obligation to produce the letter

25 and the failure to produce it was part of Lehman's overall strategy. Specifically, Mr. Kaufman

26 stated, ". . . there wasn't much need because the whole purpose of the prosecution was an attempt to

27 put as much pressure as one could to try to get the property back because the civil process wasn't

28 working in this Court." Docket # 1735 at p. 174:16-19 RJN Ex. 2. That statement by itself violates

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES

Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 9 of
27      -4-

1  California Rule of Professional Conduct Rule 5-100(A) which prohibits a member from threatening
2  to present criminal charges to obtain an advantage in a civil suit. The Court is also reminded of the
3  extraordinary steps Lehman took to conceal the Kukulka Protocol. When someone takes such steps
4  to conceal the existence of clearly discoverable information – that demonstrates scienter and intent.
5  In response to Mr. Kontrabecki's Motion, which shows the efforts Lehman undertook to conceal the
6  contents of the Protocol, Lehman asserts these were just its "normal litigation tactics. " What
7  Lehman has done in its Opposition is what they have done throughout this case, which is to
8  perpetually violate their duty of candor by omitting key facts and misrepresenting others. The fact
9  that these are their "normal litigation strategies" underscores precisely why this action must be
10 terminated and this case brought to an end.

11  **4.    There Are No Legal Grounds To Dismiss This Action Notwithstanding The**
12  **Ethical Violations**

13      The claim that Lehman's attorneys' misconduct should not result in a dismissal of their
14 claims because their actions are not egregious is simply nonsense. What should the penalty be for
15 withholding information that caused a man to be improperly imprisoned for 14 months? If
16 dismissal is not appropriate, what is the penalty for creating 6 years of delay and millions of dollars
17 in attorneys' fees, all of which Lehman admits would have been eliminated if Mr. Kontrabecki
18 would have testified in 2003 as he did in 2009?

19      The claim that Lehman cannot be held responsible for its attorneys' conduct has been
20 rejected by United States Supreme Court *Link v. Wabash R. Co.* (1962) 370 U.S. 626. In *Link*, the
21 Supreme Court makes clear that a client is responsible for the conduct of its counsel. *Id.* at 634. If
22 the client is displeased with the consequences of its attorney's conduct, the client can seek redress
23 against its counsel. Further, there is not a shred of evidence that Lehman itself was not fully aware
24 of its counsels' conduct but, rather, was an innocent and ignorant bystander as its attorneys' violated
25 their ethical obligations.

26      Further, Mr. Kontrabecki is not seeking reconsideration. Mr. Kontrabecki is not asking the
27 Court to reconsider or change any prior ruling; rather, the Motion asks the Court to consider each of
28 its prior rulings in conjunction with each other, in addition to the additional misconduct set forth in

1  the Motion, and dismiss this adversary proceeding.  Moreover, even if this was a motion to
2  reconsider, it has been common practice for Lehman to file a motion to reconsider virtually any
3  adverse ruling against them without the benefit of any new facts, law or circumstances.  The
4  statement that Rule 41(b) does not provide grounds for relief fails on two fronts.  First, Rule 41(b)
5  provides that a Court can dismiss an action if a plaintiff fails to comply with court rules or orders.
6  The rules Lehman violated are those ethical rules which set forth the duty of candor and govern the
7  disclosure of information made applicable to this proceeding by Northern Bankruptcy Rule  -2,
8  which incorporates Northern District Local Rule 11-4(a).  Second, separate from Rule 41(b), the
9  Court always has the inherent power to dismiss this action based on Lehman's misconduct.

10      **5.      Lehman's Conduct Should Be Ignored To Allow Them to Try Their "Eight-**
11              **Figure" Damage Claim**

12      Lehman pleas that its misconduct should be overlooked because its conduct is minor
13  compared to its "eight-figure damage claim."  Lehman, however, has apparently forgotten that the
14  eight-figure damage claim has been dismissed by summary judgment.  The only remaining claim is
15  one for attorneys' fees, which claim is highly questionable given the Ninth Circuit's ruling in
16  *Sternberg v. Johnston*, 582 F.3d 1114 (9th Cir. 2009).  What Lehman also forgets is that all of this
17  started as a $10,000,00 investment on which Lehman has been paid over $35,000,000, and sent their
18  borrower to jail for 14 months, depriving him of his liberty.  A dismissal of a non-existent "eight-
19  figure" damage claim in light of Lehman's extraordinary misconduct is perfectly appropriate given
20  the substantial and irreparable harm it has caused Mr. Kontrabecki.

21                          **II.  ARGUMENT**

22      Lehman's Opposition (which includes 31 single-spaced footnotes) rests on four arguments:
23  (1) that Mr. Kontrabecki caused his own harm; (2) that the actions of Lehman's counsel did not
24  cause prejudice to Mr. Kontrabecki; (3) Lehman's counsel did not act with the intent to cause Mr.
25  Kontrabecki harm and, therefore, there are no legal grounds to dismiss this action; and (4) Lehman's
26  counsel did not act willfully.  Not one of these arguments support a denial of Mr. Kontrabecki's
27  Motion.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

## A. THE ACTIONS OF LEHMAN—NOT KONTRABECKI—CAUSED THE HARM

### 1. Lehman's Counsel Knowingly Concealed the "No-Prosecution Letter" and Other Critical Information Concerning the Government's Intention to Prosecute Mr. Kontrabecki

Lehman argues its counsel never "suppressed" the no-prosecution letter. In Lehman's words, they just failed to produce it. Docket # 1940 at pp. 7:20-8:8 RJN Ex. 3. This is a distinction without difference. As the Court previously recognized, Lehman's counsel possessed the letter, withheld it, and most certainly should have produced it. *See* Docket # 1735 at p. 187:19-25 RJN Ex. 2; Docket # 1858 at p. 3, fn. 5 RJN Ex. 5.

Lehman argues the no-prosecution letter never, by itself, foreclosed the possibility of a criminal prosecution against Mr. Kontrabecki. In doing so, Lehman conveniently ignores the fact that its misconduct is much broader than just concealing the no-prosecution letter. Lehman also failed to disclose the subsequent phone call which made clear there was no longer a legitimate threat of prosecution. As the Court recognized, "just days later, Lehman's counsel had a telephone conversation with a Special Assistant United States Trustee 'UST', who reported that '...although she and her office remained interested in pursuing a prosecution of Mr. Kontrabecki, the position of the U.S. Attorney's office foreclosed any realistic prospect of doing so.'" Docket # 1858 p. 3:25-4:4 RJN Ex. 5.[1]

Lehman then argues that the no-prosecution letter is irrelevant because Mr. Kontrabecki was prepared to waive his Fifth Amendment Privilege in July of 2004. First, Lehman ignores the fact that regardless of his willingness to waive his 5th Amendment privilege, he did not do so based on the advice of counsel. Second, Lehman filed every motion possible to preclude Mr. Kontrabecki from testifying, notwithstanding his efforts to do so. *See e.g.* Docket # 718 pp. 75-78, RJN Exh. 19. As this Court has previously noted, Mr. Kaufman convinced the Court to strike Mr. Kontrabecki's

---

[1] Similarly, Plaintiff's reference to Ms. Arguedas' Declaration is inconsequential as it focuses solely on the no-prosecution letter and not the subsequent communications and this Court's findings which demonstrate there was no legitimate threat of prosecution. The suggestion that Mr. Kontrabecki could have contacted the United States Attorney's Office ("USAO") to obtain an update on the criminal referral was rebutted by the Declaration of Peter Keane, Esq., in which he declared that it is the custom of white-collar criminal defense attorneys not to contact the USAO about a client or referral as the contact may just bring attention to the client or otherwise dormant referral. Docket # 1749 p. 2 (RJN Ex. 21).

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

-7-

declaration because Mr. Kauffman argued it should not be "all or nothing" even though Mr. Kauffman knew Mr. Kontrabecki was unaware of the true status of his criminal prosecution. Finally, the primary motivation to waive the 5th Amendment and testify—the desire to be with his wife during the birth of their child—was mooted once an agreement was reached to allow Mr. Kontrabecki a furlough to be present during the birth.

**2.** **The Argument that the Kukulka Protocol Is Inadmissible Misses the Point That Lehman's Counsel Could Not Misrepresent the Kukulka Protocol's Existence Regardless of Admissibility**

The Kukulka Protocol corroborates Mr. Kontrabecki's testimony concerning the recapitalization as well as Kukulka's subsequent testimony about the recapitalization. For example, the Protocol confirmed Mr. Kontrabecki did not control Kukulka, did not pay for Kukulka's attorney's fees, and did not fund the recapitalization. Had Lehman's counsel properly disclosed the contents of the Kukulka Protocol, that Lehman conducted the questioning, that the questioning was under oath, and the Protocol had been translated into English, they could not have repeatedly represented to the Court that absolutely no evidence supported Mr. Kontrabecki's position that Kukulka was not his puppet. Instead, Lehman's counsel concealed and misrepresented the highly relevant information in the Kukulka Protocol. Moreover, Lehman's counsel relied heavily upon the purported absence of such information in seeking sanctions against Mr. Kontrabecki. Those sanctions were among the most severe imaginable, and included the payment of millions of dollars in penalties and a 14th month prison stay.

Rather than address the harm caused by and the wrongful nature of their actions, Lehman's counsel instead seeks the shelter of technicalities. They argue the Kukulka Protocol was inadmissible hearsay. This misses the point. First, regardless of its admissibility, Mr. Kontrabecki was entitled to this information as it was directly relevant to the primary issues in dispute. Second, even assuming Lehman could somehow justify withholding this highly relevant evidence, their misrepresentations concerning its relevance and the existence of information supporting Mr. Kontrabecki's arguments are indefensible. Nothing excuses such misrepresentations to the Court regardless of the Kukulka Protocol's admissibility.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

773141.05/SF

### 3. Lehman's Argument That Kontrabecki and His Counsel Knew of the Kukulka Protocol Is Without Merit and Must Be Rejected

Without a single piece of evidence, Lehman argues Mr. Kontrabecki and his counsel knew of the Kukulka Protocol. Effectively Lehman has called Mr. Kontrabecki's lawyer a liar without a shred of evidence or a logical reason. Lehman's argument is nonsensical and lacks even a modicum of evidentiary support. Maybe Lehman can explain why, if Mr. Kontrabecki had known of the Kukulka Protocol, with its support of his position and contradiction of Lehman's counsel's representations to the Court, he did not immediately bring it to the Court's attention. No such explanation exists because, if Mr. Kontrabecki had been aware of the Kukulka Protocol like Lehman argues, he clearly would not have elected to ignore it and to instead go to jail for 14 months and pay millions in sanctions.

With this Motion, we invite Lehman to present any and all evidence they have to support the claim that either Mr. Kontrabecki or his counsel have been untruthful with the Court during oral arguments or in any pleading submitted to the Court. Making such allegations requires more than just tossing the argument against the wall hoping it sticks. Indeed, if Lehman truly believed Mr. Kontrabecki was aware of the true nature of Kukulka's testimony, Lehman clearly would have questioned Mr. Kontrabecki in 2009 or his counsel Robert Sloss, Esq., who was deposed on April 22, 2004. This claim is nothing more than a mendacious Hail Mary.

### 4. Neither Federal Law or Procedure Recognize the Privilege Lehman and Its Counsel Seek to Invoke—That of Winning at Any Cost

Rather than defend its actions, the Opposition asks the Court to disregard its counsel's conduct because Mr. Kontrabecki "nefariously" hid behind his 5th Amendment privilege.[2] *See e.g.* Docket # 1940 at p. 4:7-26 RJN Ex. 3. It is difficult to follow Lehman's argument, but it seems its argument is that any attorney could disregard the ethical rules so long as the attorney believes that

---

[2] This argument also fails because Lehman had the opportunity to depose Mr. Kontrabecki on issues concerning his 5th Amendment privilege but declined to do so. Specifically, at the end of Mr. Kontrabecki's April 15, 2009, deposition, Mr. Kaufman stated that he would later examine Mr. Kontrabecki on matters concerning the "Fifth Amendment set of issues," however, Mr. Kaufman has never followed up on that statement.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES

Doc# 1947    Filed: 12/15/09    Entered: 12/15/09 22:59:16    Page 14
of 27

-9-

1    the opposing side has done something wrong. This "ends-justify-the-means" approach to an
2    attorney's ethical obligations offends both federal law and discovery requirements and must be
3    rejected.

4        Lehman argues there are many policies that "often deprive a court of a full record upon
5    which to rule." Docket #1940 at p. 29 RJN Ex. 3. Lehman seeks to equate its concealment with
6    well-recognized privileges under the Fifth Amendment and the attorney-client doctrine. This
7    argument is offensive; it seeks to—but cannot—justify truly egregious conduct by likening it to
8    established and fundamental hallmarks of the judicial process.

9        Although the Fifth Amendment Privilege and the attorney-client privilege may permit
10   parties to refrain from providing certain information, those privileges are carefully circumscribed
11   and result from a compromise made over centuries of consideration.[3] They reflect a necessary
12   balance. For example, the Fifth Amendment privilege reflects a compromise between the legal
13   process's need for evidence and an individual's right against self-incrimination. The attorney-client
14   privilege encourages open and honest communication between a party and its counsel. Lehman's
15   counsel's concealment, however, furthers no similar public policy or legal goal. It serves no
16   purpose other than to provide Lehman an unfair and improper advantage, while depriving
17   Mr. Kontrabecki and the Court of much needed, relevant information. Moreover, neither the Fifth
18   Amendment privilege, the attorney-client privilege, nor any other privilege permit a party to
19   misrepresent the existence of relevant information to the finder of fact, which is precisely what
20   Lehman has done here.

21       Indeed, Lehman's final argument, that "to the extent this record has not reflected everything
22   Kontrabecki would have wished to say on the subject of his unwind efforts, he has only himself to
23   blame," perfectly sums up Lehman's counsel's unapologetic attitude concerning their blatant
24   misrepresentations and concealment and attempt to shift the blame to Mr. Kontrabecki. Put simply,
25   it is Lehman's counsel's conduct which misled the Court, and it is Lehman's counsel's conduct

26

27
_____
[3]   The accepted privileges referenced by Plaintiff are limited, and those limitations are subject to
28   judicial enforcement and review. Plaintiff's alleged privilege to withhold evidence clearly would
     not be.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES

Case: Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 15
of 27     -10-

1 which misled Mr. Kontrabecki. Accordingly, it is Lehman's counsel's conduct which demands that
2 terminating sanctions be issued.[4]

3 ### 5. Lehman's Efforts to Demonize Mr. Kontrabecki Are Chock-Full of Misrepresentations

5 In an effort to vilify Mr. Kontrabecki, Lehman spends a great deal of its brief attempting to
6 argue Mr. Kontrabecki admitted to his alleged wrongdoing. Like much of the Opposition and
7 Lehman's prior conduct, its arguments are inaccurate and misleading. First, Lehman suggests Paul
8 Riehle warned Mr. Kontrabecki that the recapitalization violated the automatic stay. This argument,
9 however, intentionally mischaracterizes Mr. Riehle's testimony. Mr. Riehle told Mr. Kontrabecki
10 he believed the recapitalization was bad litigation strategy. He never told him it violated the
11 automatic stay. On that issue, Mr. Riehle deferred to bankruptcy counsel. Docket # 1697 at p. 6,
12 ¶ 23 RJN Ex. 7. Three separate attorneys then counseled Mr. Kontrabecki that the recapitalization
13 would not violate the automatic stay. *Id.* at pp. 7-8, ¶ 27 RJN Ex. 7; Riehle Depo. pp. 27:12-18,
14 39:23-40:7 (Ex. A to Declaration of Michael J. Betz, Esq. ("Betz Decl")). This advice appeared
15 especially sound given Lehman's counsel's repeated arguments that this Court lacked any
16 jurisdiction over the Polish companies subject to the recapitalization. *See* Docket # 561 at p. 15:18
17 – 16:2 RJN Ex. 18.[5]

---

[4]   In another example of not being forthcoming with the Court, Lehman chastises Mr. Kontrabecki for not producing documents related to Mr. Kontrabecki's claim against Kulkulka on relevance grounds and compares those objections to Lehman's withholding the Kukulka protocol and no-prosecution letter. What Lehman conveniently leaves out is that when Mr. Kontrabecki objected Lehman had already convinced the Court that discovery related to Kukulka was irrelevant because Lehman had taken the control issue off the table because it stipulated Kontrabecki did not control Kukulka. Mr. Kontrabecki's subsequent response to Lehman's request for Kukulka related information was obviously that if it is not relevant to Mr. Kontrabecki's request for information then it is irrelevant to Lehman's request for the same information.

[5]   Apparently Lehman believes it can divert the Court's attention by continually suggesting Mr. Kontrabecki has an obligation to waive the attorney-client privilege and attorney work-product privilege and explain the reasons he and his counsel decided to invoke the Fifth Amendment privilege. This argument obviously fails because Mr. Kontrabecki's conversations with his attorneys are clearly protected by the attorney-client privilege and Mr. Kontrabecki declines to take the bait. *See Fischer v. United States*, 425 U.S. 391, 403-404 (1976). What is baffling is that Lehman has committed serious breaches of its ethical duties but somehow believes those breaches are absolved because Mr. Kontrabecki has not disclosed protected attorney-client communications.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

-11-

Case# DS-05-11264   Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 16 of 27

1   In seeking to demonize Mr. Kontrabecki and in attempting to distract from the actions of its

2   counsel, Lehman's Opposition also presents Mr. Kontrabecki's deposition testimony out of context.

3   Lehman argues that, in response to Mr. Riehle's concerns, Mr. Kontrabecki stated "Yes we violate

4   the Lehman Loan Agreement . . . it was worth taking this risk." Docket # 1940 at p. 4:16-19 RJN

5   Ex. 3. What Lehman's selective quotation fails to include is a full, fair, and accurate representation

6   of Mr. Kontrabecki's testimony on the issue. Mr. Kontrabecki went on to explain in detail how and

7   why he was exercising his business judgment and was proceeding with the recapitalization in order

8   to keep WDC and OBC alive and to protect other creditors. *See* Docket # 1697 at pp. 9-10 RJN Ex.

9   7.

10       In focusing on Mr. Kontrabecki's allegedly guilty acts, Lehman has forgotten what is truly at

11  issue in the present Motion, the conduct of its counsel. It is this conduct which misled

12  Mr. Kontrabecki and the Court ,and it is this conduct which must be penalized.

13  **B.    THE ACTIONS OF LEHMAN'S COUNSEL CAUSED SIGNIFICANT PREJUDICE—INCLUDING
           TO MR. KONTRABECKI PERSONALLY AND TO HIS ABILITY TO LITIGATE THIS ACTION**

14

15       **1.    In Determining Whether to Issue Terminating Sanctions—No Finding of
                Prejudice Is Required**

16

17       First, no showing of prejudice is required in order to dismiss this action. *See Halaco*

18  *Engineering Co. v. Costle*, 843 F.2d 376, 382 (9th Cir. 1986) (finding prejudice to be "purely

19  optional"); *United States v. National Med. Enters., Inc.*, 792 F.2d 906, 912-913 (9th Cir.1986)

20  (stating prejudice is not required for dismissal); *Combs v. Rockwell Intern Corp.*, 927 F.2d 486 (9th

21  Cir. 1991), (upholding dismissal for falsification of deposition testimony with no explicit

22  consideration of prejudice). As no prejudice is required, Lehman's argument necessarily fails. If,

23  however, a showing of prejudice is required, it certainly exists in this case both to Mr. Kontrabecki

24  personally as well as in this adversary proceeding.

25       **2.    Lehman's Counsel's Conduct Has Caused Mr. Kontrabecki to Personally
                Suffer Substantial Prejudice**

26

27       The intentional concealment of key information, including that concerning the Government's

28  intention to pursue criminal allegations against Mr. Kontrabecki and the Kukulka Protocol, caused

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES

-12-

Case: 08-00305    Doc# 1947    Filed: 12/15/09    Entered: 12/15/09 22:59:16    Page 17
of 27

1   Mr. Kontrabecki to suffer significant personal prejudice. As a consequence of Lehman's

2   concealment coupled with its repeated allegations that Kontrabecki controlled Kukulka, the Court

3   acceded to Lehman's demands and sanctioned Mr. Kontrabecki with $1.6 million in coercive

4   contempt fines and almost $10 million in compensatory contempt damages. *See* Docket # 459 at

5   pp. 7:9 – 8:12. fn. 5 (arguing that contempt sanctions should issue because Mr. Kontrabecki had

6   taken the 5th Amendment and not offered any evidence concerning his mental state). Moreover, the

7   Court took from Mr. Kontrabecki that which our legal system recognizes is most sacred—

8   Mr. Kontrabecki's liberty. He was incarcerated in a federal detention facility for 14 months. While

9   money can be repaid and court orders reversed, one thing is certain: the pain, humiliation, and

10  indignity caused by incarceration can never be erased and the time he lost can never be returned.

11  There is perhaps no greater prejudice.[6]

12          As the Court subsequently observed, it would have been virtually impossible to hold Mr.

13  Kontrabecki in contempt by a clear and convincing standard had Mr. Kontrabecki been able to

14  testify: "Well, would I have — would I have found on clear and convincing evidence in Lehman's

15  favor if I had had a declaration in the spring of '04, like I now have, that you moved to strike? Do

16  you think I would have made it on a clear and convincing standard?" Docket # 1735 at p. 158:13-

17  17 RJN Ex. 2; *see Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) ("the

18  district court may impose a sanction for the contempt only if it finds that the party requesting the

19  sanction has proven contempt by clear and convincing evidence"); *Colorado v. New Mexico,* 467

20  U.S. 310, 316 (1984) ("To meet [the clear and convincing standard], a party must present sufficient

21  evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual

22  contentions are [sic] highly probable'"). Lehman's counsel, Mr. Kauffman, of course had no answer

23  to the Court's question because the only legitimate response is that the Court could not have held

24

25

---

26  [6]     Plaintiff's Opposition argues, as is discussed *infra*, that Lehman should not be subject to
    terminating sanctions based upon the actions of its counsel, ostensibly because such termination of
27  this civil suit would be too grave of a penalty. However, neither Plaintiff nor its counsel ever
    addresses the incalculable harm their actions have caused Mr. Kontrabecki. Mr. Kontrabecki is a
28  human being whose freedom was taken from him for more than a year. On balance, therefore, any
    consideration of equities favors awarding terminating sanctions.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES

773141.05/SF

-13-

1   Mr. Kontrabecki in contempt if presented with Mr. Kontrabecki's testimony and supporting

2   evidence such as the withheld Kulkulka protocol.

**3.   Lehman's Counsel's Conduct Has Caused Mr. Kontrabecki to Suffer Substantial Prejudice in This Adversarial Proceeding**

5       First, as a result of Mr. Kontrabecki's fear of prosecution and strong advice from counsel, he

6   invoked his 5th Amendment right to remain silent. By early August 2003, however, Lehman knew

7   there was no longer a legitimate threat of prosecution to justify the invocation of Mr. Kontrabecki's

8   5th Amendment privilege.[7] Unaware of the no-prosecution letter, however, Mr. Kontrabecki

9   continued to assert his 5th Amendment Constitutional right based on the advise from his counsel. In

10   large part, as a result of his silence, the Court found as a matter of law that Mr. Kontrabecki acted

11   with the requisite intent to support Lehman's intentional tort claims **and precluded Mr.**

12   **Kontrabecki from testifying at trial on the issue of intent**. *See* Docket # 1525 at 3:5-11 RJN Ex.

13   4 ("Kontrabecki has offered no evidence to overcome the inevitable conclusion that his intent has

14   been established as a matter of law. He could have offered something to establish a material factual

15   dispute as to his intent, or lack thereof; that he has remained silent is not insignificant").

16       Second, since 2003, in this adversary proceeding, Lehman has continually argued that key

17   issues have been resolved through this Court's findings during the contempt proceedings. *See*

18   Docket # 1675 at p. 12:6-15 RJN Ex. 10; Docket # 1710 RJN Ex. 11; Docket # 1507 at pp. 20:13 –

19   22:1 RJN Ex. 12; Docket # 1416 at p. 4:25 – 5:1 RJN Ex. 13; Docket # 1403 at pp. 7:21-8:21 RJN

20   Ex. 14. Indeed, Lehman has been very successful in trying this entire adversary proceeding based

21   on findings from the 2003 contempt proceedings, in which they managed to silence

22   Mr. Kontrabecki and conceal the Kukulka Protocol. *See e.g.* Docket # 1858 at pp. 7:9-9:1 RJN Ex.

23   5; May 7, 2003 at p. 12, transcript RJN Ex. 20; Docket # 1363 at p. 42 RJN Ex. 15.

---

7     As the court recognized at page 3, line 20, through page 4, line 4, of its September 2, 2009 Order, "Lehman knew, by early August, 2003, that the chances of prosecution of Kontrabecki had substantially diminished because an Assistant U.S. Attorney ('AUSA') reported to Lehman's counsel '…we have not solved the problem of the dedication of investigative resources'.…[and] just days later, Lehman's counsel had a telephone conversation with a Special Assistant United States Trustee('UST'), who reported that …'the position of the U.S. Attorney's office foreclosed any realist prospect of doing so.'" *See* Docket #1858 RJN Ex. 5.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Case: 09-03264   Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 19 of 27

-14-

1        Third, according to Lehman, its lost opportunity/delay damages were caused by

2   Mr. Kontrabecki's failure to testify, to wit: "if Kontrabecki had answered questions under oath in

3   2003 admitting his intentional torts and violation of this Court's orders, it could have shortened

4   these proceedings by six years." *See* Docket # 1940 at pp. 4:23-26, 5:16-19 RJN Ex. 3.   Mr.

5   Kontrabecki agrees that the absence of his testimony, which was first caused by an unethical threat

6   of a criminal prosecution and then the unethical withholding of evidence, caused Mr. Kontrabecki

7   not to testify, and that delayed this proceeding.   Consequently, Mr. Kontrabecki cannot be asked to

8   defend a lost opportunity case based on alleged lost opportunities caused by Lehman. As Lehman's

9   own Opposition demonstrates, it is Lehman's actions which resulted in substantial delay, thus

10  prejudicing Mr. Kontrabecki.

11      **4.**    **Lehman's Claim That Kontrabecki Suffered No Harm or Prejudice Has Also Been Rejected In Prior Rulings**

12

13       Lehman also claims Mr. Kontrabecki would have waived his 5th Amendment Privilege

14  regardless of whether Lehman failed to disclose the no-prosecution letter.   This argument fails

15  because it does not take into account the facts that (1) Mr. Kontrabecki never waived the privilege

16  regardless of his willingness to do so (Docket # 1724 at p. 1 RJN Ex. 16), (2) Lehman prevented

17  Mr. Kontrabecki from waiving the privilege through a series of frivolous motions (*see, e.g.,* Docket

18  # 686), and (3) Mr. Kontrabecki's sole reason for considering waiving the privilege—to be present

19  for his son's birth—vanished once Mr. Kontrabecki received a temporary furlough to attend the

20  birth.

21  **C.**    **THE EVIDENCE IS CLEAR—LEHMAN'S COUNSEL'S ACTIONS WERE INTENTIONAL**

22       Lehman argues that its counsel's suppression of facts concerning Mr. Kontrabecki's criminal

23  prosecution, concealment of the content of the Kukulka Protocol, and misrepresentations to

24  Mr. Kontrabecki and the Court concerning the Kukulka Protocol's relevance do not mandate the

25  issuance of terminating sanctions because such conduct was unintentional.   This argument runs

26  directly contrary to the facts and statements made by Lehman's counsel.

27       First, the Court need not look any further than Mr. Kauffman's response to the Court when

28  attempting to defend Lehman's refusal to turn over the no-prosecution letter and information related

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES
-15-

Case: 03-03264   Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 20 of 27

to the subsequent phone call. During the hearing, Mr. Kaufmann boldly stated that Lehman had absolutely no obligation to produce the letter and the failure to produce it was part of Lehman's overall strategy. Specifically, Mr. Kaufman stated, ". . . there wasn't much need because the whole purpose of the prosecution was an attempt to put as much pressure as one could to try to get the property back because the civil process wasn't working in this Court." Docket # 1735 at p. 174:16-19 RJN Ex. 2. That statement by itself was an intentional violation of California Rule of Professional Conduct Rule 5-100(A) which prohibits a member from threatening to present criminal charges to obtain an advantage in a civil suit.

Second, during a September 3, 2008, hearing, Mr. Kaufman essentially admitted that he purposefully withheld information concerning Mr. Kontrabecki's criminal prosecution. *See* Docket # 1662 at pp. 36-40 RJN Ex. 6; *see also* Docket # 1735 at p. 164:12-24 RJN Ex. 2. Specifically, Mr. Kaufman stated as follows:

> We weren't remotely going to give up the prospect, so to turn around and say, "Mr. Kontrabecki, okay, you're not being prosecuted now," if in fact he had given testimony we would have given up the ability to later seek the prosecution because we would have, you know, forced him into a situation where we asked you for the relief. We weren't going to do that. Docket # 1735 at p. 164:12 – 165:3 RJN Ex. 2.

Mr. Kaufman clearly states he made a decision not to reveal to Mr. Kontrabecki information concerning his criminal prosecution so he could keep the threat of a criminal prosecution in his back pocket. This is intentional, prejudicial, bad faith, willful and is very compelling evidence of scienter. Indeed, Mr. Kaufman's argument that he could in any cause the Government to waive its ability to criminally prosecute Mr. Kontrabecki is nonsensical.

Mr. Kontrabecki's Motion also sets forth the efforts Lehman took to conceal the Kukulka protocol. Lehman, however, brushes those efforts aside and labels them as "normal litigation tactics." The intentional concealment of critical information does not constitute a "normal litigation tactic."

In addition to demonstrating intent, these facts also demonstrate a fundamental misunderstanding of a party's ethical obligations. This is precisely why this case must be dismissed. Specifically, by labeling Lehman's efforts to hide the Kukulka protocol and no-prosecution letter as

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
773141.05/SF
-16-

Case: 08-03264    Doc# 1947    Filed: 12/15/09    Entered: 12/15/09 22:59:16    Page 21 of 27

1  "normal litigation activities," Lehman concedes it will continue to do and say anything in order to

2  increase its chances of success in this litigation.  *See* Docket # 1940 at p. 21:17 RJN Ex. 3;

3  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

4     Lehman's action are not only egregious but pervasive.  In its own words, its conduct has

5  caused this case to be delayed for six years which is the sole cause for its claimed damages.  It also

6  led to the denial of Mr. Kontrabecki's basic fundamental right to testify on his own behalf.  Finally,

7  Lehman's conduct caused Mr. Kontrabecki to lose his freedom and over $20 million in attorneys'

8  fess paid to both Lehman and his counsel.  The Court must put an end to this proceeding and

9  dismiss this case.

10 **D.    MR. KONTRABECKI'S REQUEST FOR TERMINATING SANCTIONS BASED ON LEHMAN'S COUNSELS' EGREGIOUS CONDUCT IS PROPER**

11 **    1.    Lehman Chose Its Counsel and, Consequently, Is Bound By Its Counsel's Actions**

13 As stated by the United States Supreme Court in *Link v. Wabash R. Co.*:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'
>
> . . .
>
> Clients have been held to be bound by their counsels' inaction in cases in which the inferences of conscious acquiescence have been less supportable than they are here, and when the consequences have been more serious.  [citations omitted]    Surely if a criminal defendant may be convicted because he did not have the presence of mind to repudiate his attorney's conduct in the course of a trial, a civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit. And if an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice.  But keeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant.  Moreover, this Court's own practice is in keeping with this general principle. For example, if counsel files a petition for certiorari out of time, we attribute the delay to the

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Doc# 1947    Filed: 12/15/09    Entered: 12/15/09 22:59:16    Page 22
of 27

-17-

1    petitioner and do not request an explanation from the petitioner
     before acting on the petition.

2    (1962) 370 U.S. 626, 634; *see also Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship,*

3    507 U.S. 380, 396 (1993) (citing *Link* with approval). For the same reasons, this Court has the

4    authority to grant Mr. Kontrabecki's motion, and issue terminating sanctions, without an explicit

5    finding that Lehman itself participated in or was aware of its counsel's misconduct. 709 F.2d 585.[8]

6    If Lehman's position were the rule, terminating sanctions could never issue because the

7    communications between the client and counsel are protected from disclosure based on the attorney-

8    client and attorney work-product privileges. Consequently, it would be virtually impossible for the

9    moving party to show what the client actually knew and approved. As such, it is almost always the

10   case that it is the attorneys' conduct which is before the Court when determining whether

11   terminating sanctions should issue.

12   Finally, as previously pointed out, the Opposition repeatedly argues that the Court should

13   make inferences from Mr. Kontrabecki's failure to submit supporting declarations from its counsel.

14   Mr. Kontrabecki submits that, if there are any inferences to be drawn on the basis of evidence not

15   being presented, then, on the basis of Lehman's failure to submit a declaration stating it was

16   unaware of its counsels' admitted misconduct, it must be inferred that Lehman knew of and

17   approved its counsels' concealment and misrepresentations.

18   **2.    Contrary to Lehman's Argument, the *Anheuser-Busch* Case Supports a
            Dismissal of This Adversary Proceeding**

19

20   In *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337 (9th Cir. 1995), just

21   as in this case, there was a willful concealment of discoverable information. The case focused on a

22   dispute between Ahheuser Busch and Beardslee concerning successor control of a corporation.

23   During the case, a fire purportedly destroyed Beardslee's accounting documents; however, the court

24

25   _____

26   [8]  Lehman attempts to distinguish *Link* on the grounds that it constitutes a case which was
         dismissed based on the failure to prosecute which, according to Lehman, is not the case here.

27       This distinction is without merit because Mr. Kontrabecki does not cite *Link* for the
         proposition that this case must be dismissed given Plaintiff's counsel's failure to prosecute.
         Rather, Mr. Kontrabecki cites *Link* because it indisputably stands for the proposition that a

28       client may be held accountable for its clients actions. In any event, Lehman's counsels'
         transgressions are far worse than a mere failure to prosecute.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES
-18-

Case: 09-... Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 23
of 27

subsequently found "Beardslee had long known that the [relevant] documents survived the fire and had repeatedly lied to Anheuser and the Court about their alleged destruction." In addition, the court found that Beardslee will "say anything at any time in order to prevail in this litigation." Based on these circumstances, and a belief that a new trial would be fruitless, the court issued terminating sanctions.

Sound familiar? Here, the Court has already found Lehman failed to disclose the Kukulka protocol and no-prosecution letter. The claim that the information was not discoverable is questionable but irrelevant. In *Anheuser Busch*, the Court did not rule that the information had to be admissible at trial to support a dismissal. Rather, the mere fact that it was withheld and that Beardslee lied to the court about its existence supported terminating sanctions.

As for prejudice, the court ruled "a defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." Here, most decisions made by this Court have related back to findings made in the 2003 contempt proceedings. In addition, as demonstrated in this Motion and in the Court's own words, it is entirely possible and likely that the contempt proceedings would have turned out substantially different had Lehman's counsel been forthright. *See* Docket 1735 at p. 158:13-17 RJN Ex. 2. As also noted in the motion to recuse this Court, this Court, primarily relying upon findings from the 2003 contempt proceeding, previously commented that Mr. Kontrabecki has "zero credibility." *See* May 7, 2003, transcript at p. 12 RJN Ex. 20. Finally, even if this Court revived Lehman's lost opportunity claim, it would be impossible to determine a start date given Lehman's misconduct. If Lehman had been forthright, there is no question that the delay, if any, would be substantially less. To calculate the lost opportunity claim, some time would have to be deducted to reflect an earlier date Lehman would have received the proceeds from the sale of the Polish companies. A calculation, however, would now be impossible to determine. Mr. Kontrabecki has, therefore, suffered prejudice as Lehman's action impaired his ability to go to trial and certainly threatened to interfere with the rightful decision of the case.

As for Lehman's claim that *Anheuser Busch* concerned a party's misconduct as opposed to its counsel's misconduct, it fails. While the Court never distinguished between plaintiff's

Case: 03-02654    Doc# 1947    Filed: 12/15/09    Entered: 12/15/09 22:59:16    Page 24 of 27

misconduct and that of its counsel, the Court did cite to misconduct in discovery responses, motions, and during hearings. *See Anheuser*, 69 F.3d at p. 350. Given the fact that plaintiff was represented by counsel, it can clearly be assumed that plaintiff's counsel, along with plaintiff, engaged in a pattern of misconduct. *See id.*

As for Lehman's claim that there are less harsh alternatives, the *Anheuser Busch* court answers that question as follows: "When a party has lied and hidden evidence so extensively, a judge may find, as the District Court judge in this case did, that a subsequent trial offers no assurance of a reliable result. There was no reason to be confident that the whole truth would be revealed in the second trial, and every reason to infer from its conduct that Beardslee would continue to deceive with regard to any matter on which she had not been caught." *Id.* at pp. 355-356. That is exactly the situation in this case. It has been revealed that Lehman's attorneys have suppressed evidence and will do and say anything to prevail on whatever is before the Court. Indeed, following the hearing on John Kontrabecki's recent motion for summary judgment, Lehman's counsel stated it was their intentional strategy not to include all of Ms. Debska's opinions. In its motion for reconsideration it states directly the opposite: "The evidence also demonstrates that Mr. Benvenutti, Lehman's lawyer who worked with Ms. Debska on her expert report, was laboring under other extraordinary demands and pressures at the same critical time, and that the deficiencies in the form of the expert report were inadvertent, not purposeful, and hence in good faith." Docket # 1915 at pp. 21:19 – 22:3. In sum, Lehman will do and say anything to cover up its misconduct and prevail, which has tainted this entire proceeding. Terminating this case is the only appropriate remedy.

**3.     The Court's prior Rulings Do Not Bar The Relief Sought In This Motion**

Lehman's claim that the Court's prior finding that Lehman's counsel's conduct was not egregious or in bad faith means that Mr. Kontrabecki's motion must be denied, is unavailing. The Court's prior finding was based **solely** on Lehman's counsel's concealment of the Kukulka Protocol. Specifically, the Court found that one isolated act did not demonstrate egregious conduct or bad faith conduct. *See* Docket # 1686 RJN Ex. 17. This Motion, however, sets forth the pattern of Lehman's misconduct (e.g., concealment of critical information concerning Mr. Kontrabecki's

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

773141.05/SF

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES

-20-

Case: 08-03284   Doc# 1947   Filed: 12/15/09   Entered: 12/15/09 22:59:16   Page 25 of 27

1 criminal prosecution and efforts to conceal the Kukukla Protocol) which, taken together,
2 demonstrate Lehman has engaged in egregious and bad faith conduct which resulted in one of the
3 worst possible consequences: 14 months of imprisonment and the payment of over $10 million in
4 coercive sanctions.[9]

5     **4.     Mr. Kontrabecki Is Not Relying Solely on Rule 41(b)**

6         Lehman argues that Mr. Kontrabecki fails to cite to any laws which provide this Court with
7 authority to issue terminating sanctions. Lehman is wrong. As set forth in the Motion, it is
8 undisputed that this Court has the inherent power to sanction conduct that abuses the judicial
9 process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *In re Dyer*, 322 F.3d 1178, 1192-
10 1193, 1196 (9th Cir. 2003); *In re Lehtinen*, 564 F.3d 1052, 1058-1059 (9th Cir. 2009); *Anheuser-*
11 *Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995).

12       **In addition to this inherent power to issue dismissal sanctions**, Rule 41(b) of the Federal
13 Rules of Civil Procedure, which is applicable in Bankruptcy adversay proceedings pursuant to
14 Rule 7041 of the Bankurptcy Rules of Civil Procedure, provides that a Court can dismiss an action
15 if a plaintiff fails to comply with court rules or orders. *See Yourish v. California Amplifier*, 191
16 F.3d 983, 987 (9th Cir. 1999) (plaintiff's noncompliance with judge's minute order was sufficient to
17 justify dismissal under Rule 41(b)); *see also World Thrust Films, Inc. v. International Family*
18 *Entm't, Inc.*, 41 F.3d 1454, 1456 (11th Cir. 1995) (court has authority to dismiss under local rules).
19 Here, there are several bankrutpcy court rules which Lehman violated which mandate a dismissal of
20 this action. *See* N.D. B.R. Rule 1001-2 (incorporating N.D. Cal L.R. 11-4(a)); N.D. Cal L.R. 11-
21 4(a) (stating that counsel must "[m]aintain respect due to courts of justice and judicial officers" and
22 "[p[p]ractice with the honesty, care, and decorum required for the fair and efficient administration
23 of justice").

---

9     In the face of this mountain of evidence, Plaintiff's counsel repeatedly describes its conduct as part of its "normal litigation strategy." *See* Docket # 1940 at p. 21:17 RJN Ex. 3. A litigation strategy designed to say anything to win, regardless of its veracity. When seen in totality, it is clear that Plaintiff's counsel's perpetual misconduct is both egregious and in bad faith, mandating a dismissal of this action.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1      As for the Rules of professional conduct Lehman violated, they are as follows: *See* ABA

2 Model Rules of Professional Conduct Rule 3.3(a)(1)(prohibition against false statements to tribunal

3 of law or fact); Rule 3.3(a)(4)(duty of candor to take reasonable remedial measures to correct prior

4 misstatements); Rule 3.3(b)(duty of candor to court even if it requires disclosure of confidential

5 information); Rule 3.4(a)(proscription against obstructing another party's access to evidence or

6 unlawfully altering, destroying or concealing documents or other material that have potential

7 evidentiary value); Rule 5-200(B) (a member shall not mislead a judge by artifice); Rule 5-220 (a

8 member shall not suppress any evidence that the member or the member's client has a legal

9 obligation to reveal or produce). The Court's issuance of terminating sanctions under Rule 41(b) is

10 appropriate based on Lehman's counsel's violations of these rules. *See Yourish*, 191 F.3d at p. 987;

11 *World Thrust Films, Inc.*, 41 F.3d at p. 1456.

### III. CONCLUSION

13      For the foregoing reasons, Mr Kontrabecki respectfully requests that the Court issue

14 terminating sanctions and dismiss the adversary proceeding.[10]

16 Dated: December 15, 2009

             ALLEN MATKINS LECK GAMBLE
               MALLORY & NATSIS LLP
             ROBERT R. MOORE

             By: _____/s/ Robert R. Moore_____

               ROBERT R. MOORE
               Attorneys for Defendant
               JOHN KONTRABECKI

---

[10] Lehman's Opposition also makes clear that it not only believes it is above the law and ethics but this Court's orders. Specifically, in its conclusion Lehman argues: ". . . Kontrabecki has provided no factual or legal support whatsoever for any sanction against Lehman, and certainly no argument why terminating sanctions should be imposed to prevent Lehman from pursing on the merits its claim for eight-figure damages for his intentional tortious conduct." But its lost profit "eight figure claim" has been dismissed by this Court's October 9, 2009 ruling which is apparently of no consequence to Lehman.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

773141.05/SF

-22-